UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAMIE LEAVITT, <br> f/k/a JAMIE CAVANAGH, <br><br> Plaintiff <br><br> v. <br><br> IDEXX LABORATORIES, INC., <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> )   No. 2:23-cv-00273-NT <br> ) <br> ) <br> ) <br> ) |

**ORDER ON MOTION TO AMEND COMPLAINT**

Jamie Leavitt, the Plaintiff in this sex-based discrimination and retaliation case, seeks leave to amend her complaint to allege a class action nearly sixteen months after filing suit. *See* Motion to Amend Complaint (ECF No. 33) at 1-6; Fed. R. Civ. P. 15(a)(2). The Defendant IDEXX Laboratories, Inc. opposes the proposed amendments. *See* Opposition (ECF No. 39) at 1-12. For the following reasons, Leavitt's motion to amend her complaint is denied.[1]

**I. Background**

This matter arises from Leavitt's employment at IDEXX from May 2011 to May 2021. *See* First Amended Complaint (ECF No. 10) ¶¶ 10, 68. She was originally hired as a recruiter (a grade level 500 position) and was then promoted to the following roles: (1) junior human resources business partner (HRBP) (grade level 500) in January 2013; HRBP (grade level 600) in May 2015; senior HRBP I (grade level 700)

---

[1] Leavitt also seeks leave to amend the case caption to reflect her name change from Jamie Cavanagh to Jamie Leavitt. *See* Motion to Amend Complaint at 1. In lieu of requiring any amended filings, I will apply the change to this order and ask that the Clerk's Office update her case to mirror the same.

1

in March 2016; and senior HRBP II (grade level 800) in April 2018. *See id.* ¶¶ 10-13.

In the fall of 2017, Leavitt began reporting to Zach Nelson. *See id.* ¶ 18. After a colleague began interacting with her in a way that she perceived as "flirtatious" and professionally "distracting," Leavitt sought to distance herself from the situation by asking Nelson to transfer her to a different client group. *See id.* ¶¶ 21-25. Instead of taking appropriate action, Nelson gossiped about Leavitt's request to other IDEXX employees with whom he had no professional reason to discuss it. *See id.* ¶¶ 28-29.

When Leavitt complained about Nelson's conduct to employee relations, his behavior worsened. *See id.* ¶¶ 34-35. Nelson gave Leavitt a negative performance review in which he said she was "too emotional," disparaged her to leadership, "layered" her under management by other human resource professionals so she had less visibility and fewer advancement opportunities, and cabined her in a role she did not want in the hope that she would resign. *See id.* ¶¶ 30, 36, 39-41, 48-50, 54-56.

Leavitt maintains that Nelson's behavior created a hostile, abusive, and retaliatory work environment at IDEXX in which she was evaluated differently from her peers for the same promotions, denied advancement and merit-based salary increases, and eventually constructively discharged. *See id.* ¶¶ 44-47, 51-53, 65, 68.

Leavitt filed discrimination charges with the Equal Employment Opportunity Commission (EEOC) and the Maine Human Rights Commission (MHRC) and received notice of right to sue letters on April 15, 2023, and October 10, 2023, respectively. *See id.* ¶¶ 6-7. She filed a complaint in this Court (ECF No. 1) on July 13, 2023, and an amended complaint on November 28, 2023, alleging IDEXX

2

engaged in sex-based discrimination and retaliation against her in violation of Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e to 2000e-17, as well as the Maine Human Rights Act (MHRA), *see* 5 M.R.S.A. §§ 4571-4577 (Westlaw, July 7, 2025), and engaged in disability discrimination against her in violation of the Americans with Disabilities Act (ADA), *see* 42 U.S.C. §§ 12111-12117; First Amended Complaint ¶¶ 70-95.[2]

IDEXX was granted two extensions of time to file an answer (ECF Nos. 6-9), and on December 12, 2023, filed a motion to dismiss Leavitt's entire first amended complaint for failure to state a claim (ECF No. 11). On May 28, 2024, the Court granted the motion to dismiss only as to Leavitt's ADA claim (ECF No. 16), prompting IDEXX to file a motion for partial reconsideration (ECF No. 20), which the Court denied (ECF No. 26) on August 7, 2024. Leavitt was granted extensions of time to file oppositions to both the motion to dismiss and the motion for partial reconsideration (ECF Nos. 12-13, 22-23). IDEXX then filed its answer to Leavitt's first amended complaint on August 19, 2024 (ECF No. 27).

On October 28 and November 5, 2024, Leavitt filed motions to stay proceedings or amend the scheduling order (ECF Nos. 30-31) in anticipation of the instant motion for leave to file a second amended complaint, which she ultimately filed on November 7, 2024. In response, I retroactively amended the deadline to join parties

---

[2] The only amendments Leavitt made to her original complaint were to state that she had received a right to sue letter from the MHRC and fix a typographical error.

and alter or amend pleadings to November 7, 2024,[3] and ordered remaining discovery deadlines stayed pending resolution of this motion (ECF No. 35).

In her proposed second amended class action complaint, Leavitt asserts a class action against IDEXX alleging the company engaged in a pattern of sex-based discrimination and retaliation against its female employees in violation of Title VII and the MHRA. *See* Proposed Second Amended Class Action Complaint (ECF No. 33-1) ¶¶ 240-277. Leavitt names herself, Jessica Mayhew, and Molly Hoisser as class representatives bringing claims against IDEXX on behalf of a putative class "of all female citizens of the United States who are, or have been, employed by IDEXX in the United States and have experienced gender discrimination or retaliation at any time during the applicable liability period."[4] *Id.* ¶ 215. Leavitt states "there are hundreds, if not thousands, of members of the proposed class." *Id.* Like Leavitt, Mayhew and Hoisser allege they experienced sex-based discrimination and retaliation while employed by IDEXX, and they have each exhausted their administrative remedies at the EEOC and the MHRC. *See id.* ¶¶ 9-10, 69-171.

## II. Legal Standard

A party that seeks to amend a complaint more than twenty-one days after the

---

[3] The scheduling order (ECF No. 28) originally listed November 5, 2024, as the deadline to join parties and alter or amend pleadings. Because I retroactively amended that deadline to November 7, 2024, and Leavitt filed the instant motion on that date, my analysis is governed by Fed. R. Civ. P. 15(a)(2)'s "freely give[n]" standard instead of Fed. R. Civ. P. 16(b)'s more demanding "good cause" standard, which applies to "motions to amend filed after scheduling order deadlines have passed." *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013) (cleaned up).

[4] The proposed second amended class action complaint also includes factual allegations pertaining to Jessica Schnell, an individual who filed a sex-based employment discrimination complaint against IDEXX with the MHRC in November 2024. *See* Motion to Amend Complaint at 2; Proposed Second Amended Class Action Complaint ¶¶ 172-193; Schnell MHRC Complaint (ECF No. 39-1) at 1-4.

4

filing of a responsive pleading may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Such leave should be "freely give[n] when justice so requires." *Id.* Yet courts need not "mindlessly grant every request for leave to amend," *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006), and may deny leave for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility," *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. Discussion

In this case, IDEXX opposes Leavitt's motion to amend on the bases of undue delay, dilatory motive, undue prejudice, and futility. *See* Opposition at 3.

#### A. Undue Delay and Undue Prejudice

A period of delay is "undue" if it is both "substantial and unjustified." *See Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 37 (1st Cir. 2022). As such, "when considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some valid reason for [their] neglect and delay." *Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 71 (1st Cir. 2001) (cleaned up). The First Circuit has considered delays of fourteen, fifteen, and seventeen months substantial enough to require explanation. *See In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (collecting cases). In assessing such a delay, courts take into account "what the movant knew or should have known and what [they] did or should have done." *Id.* at 3-4 (cleaned up).

5

Additionally, because delay inevitably accompanies a Rule 15(a)(2) motion, "the necessary quantum of prejudice must implicate more than the inconveniences and delays that are inherent in the granting of any such motion in order to justify its denial." *U.S. Bank Nat'l Ass'n v. James*, 680 F. Supp. 2d 259, 261-62 (D. Me. 2010). Thus, undue prejudice "[m]ost often . . . takes the form of additional, prolonged discovery and a postponement of trial." *Klunder v. Brown Univ.*, 778 F.3d 24, 34 (1st Cir. 2015); *see, e.g.*, *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52 (1st Cir. 1998) (affirming denial of a motion to amend that would have prejudiced Hilton by resulting in "a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial strategy and tactics").

IDEXX argues that Leavitt's motion to amend should be denied on the basis of undue delay because Leavitt and Mayhew filed suit in this Court in July 2023, Hoisser filed suit in state court in August 2024, and the same attorney represents all three individuals, meaning Leavitt knew a class action was possible as early as July 2023, and certainly by August 2024. *See* Opposition at 3-4. A change in litigation strategy, IDEXX contends, cannot justify such a long delay. *See id.* at 4. IDEXX further asserts it would be unduly prejudiced if the proposed amendments were permitted because waiting for "hundreds, if not thousands" of potential class members to exhaust their administrative remedies before joining the action would surely generate an indeterminate but substantial delay, and the company has already engaged in significant litigation against these plaintiffs individually and is entitled to resolution of the dispositive motions filed in those actions. *See id.* at 4-5.

6

In response, Leavitt's counsel maintains that while Leavitt's and Mayhew's overlapping cases may have supported a request for consolidation, she did not feel that a class action "materialized" until Hoisser and Schnell retained her in August 2024 to allege similar claims, and all four individuals named other similarly situated current or former IDEXX employees. Reply (ECF No. 42) at 4-5. She offers no explanation for the three month filing delay between August and November 2024. Leavitt also insists the proposed amendments would benefit all parties because a class action would economize discovery that would otherwise proceed individually in each plaintiff's lawsuit. *See id.* at 5; Motion to Amend Complaint at 3-4. She correspondingly requests, *see* Motion to Amend Complaint at 2, that I stay Mayhew's case against IDEXX in this Court, *see* No. 2:23-cv-00285-SDN, as well as Hoisser's case against IDEXX in the Maine Superior Court, *see* No. CV-24-308.

Considering these circumstances, I conclude that the information available to Leavitt's counsel did not change significantly enough between July 2023 and August 2024 to justify the nearly sixteen month delay between filing a complaint and seeking leave to so drastically amend it.[5] *See Calderón-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend.").

At both points in time, Leavitt's counsel represented more than one litigant

---

[5] I do not, however, accept IDEXX's position that I should infer dilatory motive from these circumstances. *See* Opposition at 3-4. It is not evident that Leavitt's reasons for the undue delay are disingenuous or that the delay itself was purely tactical. *See* Motion to Amend Complaint at 4-5 (explaining that new information came to light supporting a class action and judicial economy would be served by jointly litigating these claims). *Cf. Febus-Cruz v. Sauri-Santiago*, 652 F. Supp. 2d 166, 169 (D.P.R. 2009) (finding dilatory motive where the plaintiffs filed their motion to amend three weeks before trial and attempted to mislead the court about when they obtained the requisite information).

7

asserting that IDEXX engaged in sex-based discrimination and retaliation against them in violation of Title VII and the MHRA, and that they knew of similar violations against other female employees. *Compare* First Amended Complaint ¶¶ 2, 15, 27, 32 *and* Mayhew Complaint, No. 2:23-cv-00285-SDN (ECF No. 1) ¶¶ 2, 30, 42, 54, *with* Proposed Second Amended Class Action Complaint. I am also unpersuaded that a class action became viable only in August 2024 when Leavitt's counsel represented Leavitt, Mayhew, Hoisser, and Schnell, who could each "name many more" similarly situated current or former IDEXX employees. *See* Reply at 4-5. While Hoisser identifies two such individuals in the proposed second amended class action complaint, neither Schnell nor Leavitt identify anyone, and Mayhew points to one individual but there is no indication that Leavitt's counsel could not have gathered the information from her as early as July 2023 with due diligence.[6] *See* Proposed Second Amended Class Action Complaint ¶¶ 119, 152-162.

I also conclude that IDEXX would be unduly prejudiced by the proposed amendments. To begin with, no authority supports my ability to stay a case pending on a different docket in this Court, much less in a state court. *See Younger v. Harris*, 401 U.S. 37, 41 (1971) (emphasizing that federal courts may not "stay or enjoin pending state court proceedings except under special circumstances"); *Bar Harbor Bank & Trust v. Hanover Ins. Grp., Inc.*, No. 1:21-cv-00201-LEW,

---

[6] Leavitt's counsel also identifies two employees in California—B.A. and S.O.—who IDEXX allegedly discriminated and retaliated against for speaking out about the company's sex discrimination as well as a glitch in one of its products. *See* Proposed Second Amended Class Action Complaint ¶¶ 195-199. Litigation pertaining to the product issue commenced in state court in January 2024 and was removed to federal court in February 2024, however, suggesting Leavitt's counsel could have with proper due diligence identified the employees involved much earlier. *See* Notice of Removal (ECF No. 1), *The Labelle Found., Inc. v. IDEXX Laboratories, Inc.*, No. 2:24-cv-01131-FLA-SK (C.D. Cal. Feb. 9, 2024).

2022 WL 2410256, at *1 (D. Me. Jan. 12, 2022) ("The district court 'has broad discretion to stay proceedings as an incident to its power to control *its own docket*.'" (emphasis added)) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)).

Moreover, Leavitt's suggestion that allowing this case to proceed as a class action would lessen IDEXX's overall discovery burden does not pass the straight face test. The proposed amendments would impose a significant burden on IDEXX to investigate and produce discovery for "hundreds, if not thousands" of putative class members, postpone any potential trial, and require IDEXX to reimagine its original litigation strategy. While these types of delay might be expected to attend any motion to amend a complaint to assert a class action, Leavitt's request to so greatly alter the case now must be denied as unduly prejudicial because it effectively negates sixteen months of litigation. *See Avery v. Wellpath, LLC*, No. 2:20-cv-00428-NT, 2022 WL 2316711, at *2-3 (D. Me. June 28, 2022) (concluding that granting a motion to amend which sought to add new claims and over a dozen new defendants would unduly prejudice the defendants because it was filed over seventeen months after the case was initiated and would "essentially restart [the] matter from square one, which would, in turn, erase any progress that the parties [had] made over the past year and a half and further delay resolution of [the] matter"); *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (affirming denial of a plaintiff's motion to amend where the amendments would have been "tantamount to restarting the proceedings, complete with new defendants . . . and an entirely new cause of action" and the plaintiff "had waited too long to alter the nature of the proceedings so drastically");

9

...

*see also Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) ("Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.").

## B. Futility

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (cleaned up). To justify departing from that rule, "class representative[s] must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 348-49 (cleaned up). Rule 23(a) of the Federal Rules of Civil Procedure ensures the named plaintiffs are appropriate class representatives by imposing four requirements—numerosity, commonality, typicality, and adequate representation—that "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* at 349 (cleaned up).

IDEXX argues that Leavitt's proposed second amended class action complaint is futile because the allegations therein fall short of Rule 23(a)'s threshold class action requirements—specifically, commonality and typicality—as well as Rule 23(b)(3)'s predominance requirement. *See* Opposition at 5-7, 9-10. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

Commonality requires "a plaintiff to show that 'there are questions of law or fact common to the class.'" *Wal-Mart*, 564 U.S. at 349 (quoting

10

Fed. R. Civ. P. 23(a)(2)). But "[t]his does not mean merely that [the class members] have all suffered a violation of the same provision of law." *Id.* at 350. For example,

> Title VII . . . can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* The commonality requirement can be especially difficult to satisfy where class members allege that an employer engaged in a pattern or practice of discrimination "because, in resolving an individual's Title VII claim, the crux of the inquiry is the reason for a particular employment decision." *Id.* at 352 (cleaned up).

Typicality, on the other hand, requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Class representatives' claims are therefore "typical" when they "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." *García–Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009) (cleaned up).

The Supreme Court has stated that Rule 23(a)'s commonality and typically requirements "tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is

11

economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)).

Finally, predominance requires a finding by the Court "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)).

IDEXX contends the claims in the proposed second amended class action complaint fail commonality and typicality under Rule 23(a) because they are based on varying legal theories and arose from distinct circumstances involving highly individualized employment decisions instead of "a specific, single [discriminatory] practice . . ., [much less] one helmed by a single decision-maker." Opposition at 6-7. These same circumstances also solidify the proposed amendments' futility under Rule 23(b)(3), IDEXX argues, because the proposed class representatives' claims are so rooted in subjective decision-making that individual-specific fact inquiries would "undoubtedly predominate" over any common issues. *Id.* at 9-10.

Leavitt disputes IDEXX's position, stating that it ignores the allegations that the proposed class representatives were "identically" affected by its cultural mandate, or "pattern and practice," of discriminating against women "any time they asserted their rights." Reply at 8-9. She also maintains that IDEXX's futility arguments are factual in nature and should therefore be disregarded as speculative and premature

12

in the absence of pre-certification discovery "[b]ecause the analysis of whether a class will ultimately be certified is far more complicated and beyond the scope of a simple Rule 15 motion for leave to amend." *Id.* at 7-10.

While the First Circuit instructs that review of the complaint, absent "some development of the facts," is not "normally" adequate for "determining whether a class eventually can be certified" under Rule 23, *College of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 41-42 (1st Cir. 2009), it clearly acknowledges "there may be rare situations in which it is obvious from the complaint alone that there cannot be a class that would warrant certification," *id.* at 41 n.3; *see also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (noting "[t]he Supreme Court has recognized that '[s]ometimes the issues are plain enough from the pleadings to determine whether the interest of the absent parties are fairly encompassed within the named plaintiff's claim.'") (quoting *Falcon*, 457 U.S. at 160).

This is one such situation. Leavitt has not explained, nor can I ascertain, what type of discovery or factual development would render this proposed class action capable of Rule 23 certification. For the reasons described below, the individualized nature of the allegations in the proposed second amended class action complaint make the claims therein unsuitable for classwide resolution.

First, the proposed class representatives cannot trace their injury to a truly common contention (for example, an allegation of discriminatory bias by a particular IDEXX supervisor). *See Wal-Mart*, 564 U.S. at 350. This proposed class action does not hinge on a purportedly discriminatory corporate policy at IDEXX, but rather the

13

individual, allegedly discriminatory employment decisions made by its various supervisors: Leavitt's allegations pertain to Zack Nelson, Gio Twigge, Jennifer Stickney, and Katie Wellman, Mayhew's allegations reference a manager named Bev and other unnamed individuals in management and human resources, and Hoisser's allegations involve Nelson, Twigge, and Sarah Hare. *See* Proposed Second Amended Class Action Complaint ¶¶ 15-171. The Supreme Court has indicated that while an employer's decision to permit its supervisors discretion over employment decisions can support Title VII liability, it "does not lead to the conclusion that every employee in a company using a system of discretion has such a claim in common." *Wal-Mart*, 564 U.S. at 355. The very nature of such discretion means that establishing the illegality of one supervisor's employment decision will not establish the illegality of another's; thus, "[a] party seeking to certify a nationwide class [against such a company] will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions." *Id.* at 355-56.

Second, even if the proposed class representatives shared a common contention, it would not predominate because determining the reasons underlying the various employment decisions and how they affected each class member would require "a great deal of individualized proof." *Belezos v. Bd. of Selectmen of Hingham, Ma.*, No. 17-12570-MBB, 2019 WL 6358247, at *12 (D. Mass. Nov. 27, 2019) (concluding that common questions did not predominate where putative class members were cited for speeding violations "on 25 separate roadways, at numerous speed limit signs, for traveling various speeds" and determining the defendants'

14

liability to each class member would require delving into "myriad . . . individualized legal and factual issues" pertaining to the legality of the defendants' erection of each sign as well as "the enforcement of each sign regarding each putative class member"); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997) (stating that "the predominance criterion is far more demanding" than Rule 23(a)'s commonality).

Lastly, while the proposed class representatives' claims emanate generally from IDEXX's alleged pattern of sex-based discrimination and retaliation, the "essential characteristics" of those claims arise from the legality of each individual employment decision. *Belezos*, 2019 WL 6358247, at *10. For example, Leavitt's interest centers on presenting the illegality of Nelson's, Twigge's, Stickney's, and Wellman's conduct to show they engaged in sex-based discrimination and retaliation, and created a hostile working environment, in violation of Title VII and the MHRA. *See* Proposed Second Amended Class Action Complaint ¶¶ 15-58. Even assuming Leavitt's claims typify the claims of other putative class members who received the same treatment from those supervisors, however, they are not typical of claims by putative class members who were purportedly subjected to similar behavior by other IDEXX supervisors, who may even be located in other states, each of which would require a separate inquiry into the legality of that particular supervisor's conduct. *See Belezos*, 2019 WL 6358247, at *10; Proposed Second Amended Class Action Complaint ¶ 215 ("The class consists of all female citizens of the United States who are, or have been, employed by IDEXX in the United States and have experienced discrimination or retaliation at any time during the applicable liability period.").

15

Accordingly, typicality is lacking. *See García–Rubiera*, 570 F.3d at 460.

Because I conclude that the proposed second amended class action complaint fails to satisfy Rule 23's commonality, typicality, and predominance requirements, I need not reach IDEXX's other arguments in support of futility.

## IV. Conclusion

For the aforementioned reasons, the Plaintiff Jamie Leavitt's motion for leave to amend her complaint to assert a class action is **DENIED**.

## *NOTICE*

***In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.***

***Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.***

Dated: July 7, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge